**In the Matter of VERRAZZANO TOWERS, INC., Debtor.**

**Bankruptcy No. 180–02375.**

United States Bankruptcy Court,
E. D. New York.

Dec. 5, 1980.

Franklin Rand Weiss, P.C., Corona, N. Y., for debtor, by Franklin Rand Weiss, Leon Rock and Janis Weissman, Corona, N. Y., of counsel.

Frank L. Skillern, Jr., Gen. Counsel, Washington, D. C., by Sheldon J. Reisman, Regional Counsel, and Monica S. Lercher, Regional Atty., New York City, for Federal Deposit Ins. Corp.

Jessel Rothman, P.C., Mineola, N. Y., for Flushing Sav. Bank.

MANUEL J. PRICE, Bankruptcy Judge.

This is an application by the Federal Deposit Insurance Corporation ("FDIC") to limit the scope of a subpoena duces tecum issued by this court which requires the production of certain of its records in a proceeding arising out of this Chapter 11 proceeding and for an order protecting the confidentiality of the records and documents produced.

In order to place this application in proper perspective, a brief description of the prior proceedings is necessary and it follows:

On May 6, 1980, a petition for relief pursuant to Chapter 11 of the Bankruptcy Act of 1978, ("The Code"), 11 U.S.C. § 1101 *et seq.* was filed by Verrazzano Towers, Inc. ("Verrazzano"). It was signed by James Gherardi ("Gherardi"), a stockholder and director, as president. He also signed the certificate attesting to his authority to file the petition. Verrazzano's principal asset is a piece of real property located in the Bay Ridge section of Brooklyn which, shortly before the petition was filed, had been held in the name of RGR Associates ("RGR"), a partnership consisting of Gherardi and Vincent and Raymond Riso ("The Risos") who were also the remaining stockholders, officers and directors of Verrazzano.

On May 14, 1980, the Flushing Savings Bank ("Flushing"), the holder of various mortgages on the property moved, by an order to show cause, for the dismissal of the petition on the ground that Gherardi did not have the authority to file it without the authorization of the Risos. Gherardi, on behalf of Verrazzano, questioned Flushing's standing to raise the issue and, after hearing oral argument, I reserved decision on that issue and set the matter for trial on the issue of Gherardi's authority to file the petition.

It is Verrazzano's position that Gherardi had the necessary authority to file the petition without the consent of the Risos since they were involved in other business ventures with Flushing which gave rise to a conflict of interest between them and Verrazzano. During the course of the trial, it developed that the Risos and Flushing were engaged in a joint venture known as Doug Park Associates ("Doug Park") for the development of certain real property in Queens County which also involved a corporation known as Rayfield Properties, Inc. ("Rayfield"). It also developed that the FDIC had conducted an examination into Flushing's involvement in real estate investments and joint ventures generally, and that it had obtained an agreement from Flushing concerning its future participation in enterprises of this kind. In its effort to prove the nature of the relationship between the Risos and Flushing, Verrazzano obtained a subpoena duces tecum from the clerk of this court which was served upon the FDIC requiring it to appear, testify and to bring with it "all orders, directives, correspondence, memoranda, relating to Flushing Savings Bank and its involvement with mortgages, joint ventures and other land dealings." (Attachment 1 to FDIC memorandum).

Upon receipt of the subpoena, the legal staff of the FDIC communicated with counsel for Verrazzano in an attempt to reach an agreement on the material to be produced and it prepared redacted copies of certain of the requested documents which were placed in the court's custody, together with a proposed stipulation and protective order designed to ensure their confidentiality. Verrazzano's counsel has rejected the offer and demanded unrestricted access to all of the subpoenaed material.

■ The FDIC takes the position that the requested documents, even if relevant to the issues presented, are privileged and confidential and should not be released without the safeguard of a protective order. Flushing contends that all of the materials sought are absolutely privileged and should not be released under any circumstances. Verrazzano asserts that the official information privilege covers summaries and analyses prepared by governmental bodies but not the factual material requested in the subpoena. In addition, it argues that no protective order is necessary since the information it seeks is generally known to the public. Oral argument was heard on October 10, 24 and 31, 1980 and memoranda have been submitted by all parties. Upon review of the arguments and authorities presented, I grant the FDIC's application for a protective order and to limit the subpoena for the reasons set forth below.

Pursuant to 12 U.S.C. § 1811 *et seq.*, the FDIC is one of the federal regulatory agencies responsible for the supervision of financial institutions. As such, it subjects banks insured by it to periodic examinations regarding their financial soundness, banking practices and compliance with rules and regulations. 12 U.S.C. § 1819 (eighth), § 1820(b) (1976). In order to accomplish this, its examiners must have access to all of the records of banks being examined, including their most confidential lists of depositors, assets, business transactions and investments. Of the documents and records developed by the FDIC in the performance of its regulatory function, many include opinions, conclusions of its examiners and officials, and many of the documents contain confidential information about banks under its supervision as well as about borrowers doing business at those banks. 12 U.S.C. § 1820(b) (1976).

Because of the sensitive and confidential nature of the information contained in the reports, they are not available to the general public. However, the FDIC regulations provide for the production of exempt records in limited circumstances. Its obligations to furnish documents in its possession pursuant to a subpoena are set forth in 12

C.F.R. § 309.5. Subdivision (f) enumerates documents which are exempt from the requirement of production even pursuant to subpoena. Subdivisions (5) and (8) provide for the exemption of:

"(5) Interagency or intraagency memoranda or letters which would not be available by law to a private party in litigation with the Corporation;

\* \* \* \* \* \*

"(8) Records contained in or related to examination, operating, or condition reports prepared by or on behalf of, or for the use of, the Corporation or any agency responsible for the regulation or supervision of financial institutions."

12 C.F.R. § 309.6(c)(8) (1980) authorizes the FDIC's general counsel, or someone designated by him, to produce exempt records in response to a subpoena, court order or other legal process so long as conditions he deems necessary to protect confidentiality are fulfilled. This regulation reads as follows:

"The Corporation's General Counsel, or anyone designated by him in writing, may produce or authorize the production of any exempt record in response to a valid subpoena, court order, or other legal process and may authorize any officer, employee, or agent of the Corporation to appear and testify regarding any exempt record at any administrative or judicial hearing or proceeding where such person has been served with a valid subpoena, court order, or other legal process requiring him to so testify. The General Counsel, or anyone designated by him in writing, may produce or authorize the production of any exempt record sought in connection with any hearing or proceeding without the service of a subpoena, or other process requiring production, if he determines that the records to be produced are relevant to the hearing or proceeding and that production is in the best interests of justice. Where the General Counsel authorizes the production of any exempt record, or the testimony of any officer, employee or agent of the Corpo-

ration relative thereto, pursuant to this § 309.6(c)(8), he shall limit his authorization to so much of the record or testimony as is relevant to the issues at the hearing or proceeding, and he shall give his authorization only upon fulfillment of such conditions as he deems necessary to protect the confidential nature of the record consistent with any requirement that it be produced and made a part of the record of the hearing or proceeding."

However, 12 C.F.R. § 309.6(c)(11) (1980) provides:

"Any disclosure permitted by this § 309.-6(c) is discretionary and nothing in this § 309.6(c) shall be construed as requiring the disclosure of information. Further, nothing in this § 309.6(c) shall be construed as restricting, in any manner, the authority of the Board of Directors, the Chairman of the Board of Directors, the Director of the Corporation's Division of Bank Supervision or anyone designated by him in writing, the Corporation's General Counsel or anyone designated by him in writing, or any other Corporation Division or Office head, in their discretion and in light of the facts and circumstances attendant in any given case, to impose conditions upon and to limit the form, manner, and extent of any disclosure permitted hereunder."

It is thus manifest that the voluntary disclosure of exempt records is not mandatory but is completely discretionary.

The confidential nature of reports prepared by agencies responsible for the regulation or supervision of financial institutions was recognized by Congress when it passed the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976). Subdivision (b)(8), protects from disclosure those matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."

In the present case, the FDIC did indicate a willingness to turn over redacted copies of some of the documents requested in Verrazzano's subpoena under a protective order.

The FDIC officials are in compliance with the FDIC regulations in this regard. Verrazzano, however, has refused the FDIC's offer and has requested that this court review all of the subpoenaed material to determine its relevance and its privileged status. Moreover, Verrazzano has refused to enter into any stipulation regarding the confidentiality of information contained within the subpoenaed documents. Thus, it is now necessary that I decide the extent to which the FDIC documents are privileged and the scope of a protective order covering any FDIC material turned over to Verrazzano.

The official information or government privilege is based on the assumption that "effective and efficient governmental decision making requires a free flow of ideas among governmental officials." *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 577, 580–81 (E.D.N.Y. 1979). A second theory supporting the privilege, derived from the constitutional doctrine of separation of powers, is that "[t]he judiciary ... is not authorized 'to probe the mental processes' of an executive or administrative officer." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 325 (D.D.C.1966), *aff'd on opinion below*, 384 F.2d 979 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

■ Importantly, the official information privilege is limited in scope. It protects expressions of opinion or recommendations in intra-agency documents and communications. It usually does not protect factual material. *In re Franklin National Bank Securities Litigation, supra* at 581. In addition, the privilege is a qualified privilege in that:

"[T]he privilege is a discretionary one that depends upon *ad hoc* considerations of competing policy claims, the policy of free and open discovery juxtaposed to the need for secrecy to insure candid expression of opinions by government employees in the formulation of government policy."

*United States v. Article of Drug Consisting of 30 Individually Cartoned Jars More or Less,* 43 F.R.D. 181, 190 (D.Del.1967) (citations omitted). *See also, Denny v. Carey,* 78 F.R.D. 370 (E.D.Pa.1978).

In balancing the needs of the FDIC with Verrazzano's in this case, I find at least three important policies to be served by limiting access to FDIC records. These include 1) the promotion of stability of financial institutions, 2) the maintenance of cooperative relationships between banks and their supervising agencies, and 3) the protection of confidential information relating to bank customers.

The first two rationales were discussed in *Consumers Union of United States, Inc. v. Heimann,* 589 F.2d 531 (D.C.Cir.1978). In that case, the court interpreted the scope of FOIA exemption 8, the exemption of all information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8) (1976). The court relied on reports of both the Senate and the House concluding:

> "[T]he primary reason for adoption of exemption 8 was to insure the security of financial institutions. Specifically, there was concern that disclosure of examination, operation, and condition reports containing frank evaluations of the investigated banks might undermine public confidence and cause unwarranted runs on banks. . . . Furthermore, a secondary purpose in enacting exemption 8 appears to have been to safeguard the relationship between the banks and their supervising agencies. If details of the bank examinations were made freely available to the public and to banking competitors, there was concern that banks would cooperate less fully with federal authorities."

*Consumers Union of United States, Inc. v. Heimann, supra* at 534 (footnotes omitted). In another recent case, the Court of Appeals for the District of Columbia expanded upon its discussion in *Consumers Union* stating that "[i]t is clear from the legislative history that the exemption was drawn to protect not simply each individual bank but the integrity of financial institutions as an industry." *Gregory v. Federal Deposit Insurance Corporation,* 631 F.2d 896 at 898 (D.C.Cir.1980) (citations omitted).

Although FOIA has no direct application in the present case, the rationale behind exemption 8 is clearly analogous to any policy supporting the official information privilege claimed by the FDIC. It is presumed that revelation under FOIA of information in the possession of federal banking agencies such as the FDIC might produce harmful results for the banking industry and the supervising agencies. It then seems clear that disclosure of the same types of records to private parties in the course of litigation could have similar undesired effects. I conclude that the FDIC in fact has a significant interest in nondisclosure of the documents requested by Verrazzano. Moreover, one district court has found that "[t]he legislative history, though limited, strongly implies that *all records, regardless of the source,* of a bank's financial condition and operations and in the possession of a federal agency 'responsible for the regulation or supervision of financial institutions,' are exempt." *McCullough v. Federal Deposit Insurance Corporation,* No. 79–1132, slip op. at 5 (D.D.C. July 28, 1980). This holding indicates that the FOIA exemption 8, and likewise the official information privilege regarding records of banking agencies, is very broad in its sweep. There can be no comparison to the holding in *In re Franklin National Bank Securities Litigation, supra,* which allowed disclosure of examination reports since that case involved disclosure between two government agencies, the FDIC and the Office of the Comptroller of the Currency, both responsible for the supervision of banks and involved information about a bank which had totally collapsed long prior to the litigation in question. In addition, the FDIC is not a party to this litigation, but merely a witness.

Finally, I see a third policy to be considered as supporting the protection of the FDIC documents. This policy concerns the

security of information relating to bank customers rather than the financial institutions themselves. The general protection given to banking agency reports under FOIA taken in conjunction with the statutes imposing criminal sanctions against federal employees for disclosing information obtained from an examination or investigation, 18 U.S.C. § 1905, 1906 (1976) and the Right to Financial Privacy Act of 1978 which restricts release to government agencies of an individual's financial records, 12 U.S.C. § 3401 *et seq.* (1976), further indicates that Congress intended that banking records not be freely divulged unless a clear necessity is shown.

■ Although some of the documents requested by Verrazzano may contain factual information and, therefore, arguably are subject to disclosure, the pronounced interest in protecting bank regulatory agency records from unchecked disclosure clearly outweighs Verrazzano's need, if any, to see all the documents it has requested. Much of the information sought is hardly relevant to the issue to be decided by me, namely, whether Gherardi had the authority to file the petition for Verrazzano. The subpoena requests "*all* orders, directives, correspondence, memoranda relating to Flushing Savings Bank and its involvement with mortgages, joint ventures and other land dealings." (emphasis mine). It is not limited to Flushing's dealings with the Risos or any corporation, partnership or joint venture in which they were participants. The subpoena thus requires the disclosure of just the kind of information protected by subdivision (b)(8) of FOIA, 5 U.S.C. § 552(b)(8), involving complete strangers to this litigation. The official information privilege normally requires *in camera* inspection of documents in order for the court to determine whether the government's interest in nondisclosure outweighs the interest of the litigants in disclosure. *In re Franklin National Bank Securities Litigation, supra,* at 582. I will, therefore, review *in camera* all records relating to all business ventures of any kind of the Flushing Savings Bank involving Verrazzano Towers, Inc., the Risos, Doug Park Associates, and

those referring to Rayfield Properties, Inc. and RGR Associates. It is perfectly evident that the FDIC is well within its rights, if not obligated, to demand that the potentially sensitive information contained within its records be subject to a protective order in order to maintain strict confidentiality except as necessitated in the proceeding before this court. I will therefore require that any documents released to Verrazzano be subject to a protective order.

Submit order in conformity herewith.