In re **FINANCIAL CORPORATION OF AMERICA, a Delaware corporation d/b/a American Insurance Services, d/b/a FCA Credit Corp., f/d/b/a Oak Insurance Agency, a/k/a FCA, a/k/a Stock Symbol, FIN, Debtor.**

Bankruptcy No. SA 88–05405 JW.

United States Bankruptcy Court, C.D. California.

Sept. 24, 1990.

Rolf S. Woolner and Russell P. Nowell of Milbank, Tweed, Hadley & McCloy, Los Angeles, Cal., sp. counsel for David A. Gill, Chapter 7 Trustee.

L. Allan Songstad, Jr. and Julia Gail Lance of Meserve, Mumper & Hughes, Irvine, Cal., for FDIC.

Jeffrey R. Fine of Strasburger & Price, Dallas, Tex., for New West Federal Sav. & Loan Ass'n.

Thomas A. Pashalides of American Sav. Bank, FSB, Irvine, Cal., for American Sav. Bank, FSB.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

This matter comes before the Court on the motion of the Chapter 7 Trustee for Financial Corporation of America ("FCA") to compel the production of documents by New West Federal Savings and Loan Association ("New West") and American Savings Bank, FSB ("ASB"), and on the motion by New West, ASB, and the Federal Deposit Insurance Corporation ("FDIC") for a protective order. New West, ASB, and the FDIC opposed the Trustee's motion to compel the production of documents; the Chapter 7 Trustee opposed the FDIC, New West, and ASB motion for a protective order.

## BACKGROUND

The Debtor, Financial Corporation of America ("FCA"), a corporation organized under Delaware law, was the parent of American Savings and Loan Association ("Old American"), a stock savings and loan association organized under the laws of California. The accounts of Old American were insured by the Federal Savings and Loan Insurance Corporation ("FSLIC") in its capacity as a corporate instrumentality of the United States.

On September 5, 1988, the Federal Home Loan Bank Board ("Bank Board") appointed the FSLIC receiver for Old American. On September 6, 1988, the FSLIC, as receiver, transferred substantially all the assets of Old American to American Savings, a newly created federal savings and loan association. On September 9, 1988, four days after the Bank Board appointed the FSLIC receiver for Old American, FCA filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code.

In December 1988, the Bank Board appointed the FSLIC receiver for American Savings. As receiver, the FSLIC entered into an agreement with New West Federal Savings and Loan Association ("New West"), a federally chartered savings and loan association, whereby New West assumed substantially all the liabilities of American Savings. The majority of the assets of American Savings were transferred to American Savings Bank, FSB ("ASB"), another federal savings and loan association.

FCA's bankruptcy was converted from a Chapter 11 reorganization to a liquidation under Chapter 7 in February 1989. In August 1989, the FSLIC was abolished pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act; accordingly, the FDIC assumed essentially all the duties and responsibilities of the FSLIC.

Following FCA's conversion to Chapter 7, the newly appointed Chapter 7 Trustee initiated an investigation of potential claims of the bankruptcy estate. As part of the

investigation, the Trustee requested records in the possession of New West and ASB many of which pertained to the operation of Old American while it was a subsidiary of FCA. Although many documents were produced, a number of records were withheld from production under assertions of privilege and other objections. Late in 1989, the FDIC took charge of the document production to the FCA Trustee.

In December 1989, the Trustee brought a motion in the Bankruptcy Court for an order authorizing an examination of the custodian(s) of records of New West and ASB and compelling the production of documents pursuant to Bankruptcy Rule 2004. New West and ASB responded by filing a motion to quash and for a protective order.

Prior to the hearing on these matters, the Trustee, New West, and ASB entered into a stipulation and order providing for the orderly turnover and production of documents. The stipulation also preserved New West's and ASB's right to raise objections and move the Court for a protective order. In the event New West and ASB failed to bring such a motion, the Trustee was authorized to seek a 2004 examination of the custodian(s) of records of New West and ASB.

Pursuant to the stipulation, New West and ASB provided the Trustee with transmittal sheets corresponding to approximately 70,000 boxes of records. From these indices, the Trustee designated some 800 boxes for copying and physical review. By April 26, 1990, hundreds of boxes of documents were produced or made available to the Trustee; again, however, many documents were withheld from production. The documents withheld were identified, and the grounds for nondisclosure were asserted, in a 165 page report delivered to the Trustee on April 17, 1990.

The parties failed to resolve the production dispute through negotiations, and on April 19, 1990, the Trustee filed a motion to compel the production of documents. On April 26, 1990, the FDIC, New West, and ASB filed a motion for a protective order. A preliminary hearing on the Trustee's motion to compel was held on May 10, 1990, and continued to July 19, 1990 for a final hearing. The hearing on the motion for a protective order, originally scheduled for May 17, 1990, was also continued to July 19, 1990, in order to be considered with the Trustee's motion.

Because the scope of production was too large to conduct an examination of individual documents, the parties have addressed their motions to the following categories of documents:

(1) Documents circulated among the FHLBB, the FDIC, the FSLIC, the Federal Reserve, Old American, American Savings, New West, ASB, and their subsidiaries;

(2) Documents containing confidential customer information that are protected by financial privacy rights;

(3) Attorney-client communications involving Old American, American Savings, New West, ASB, their subsidiaries, and their counsel;

(4) Any documents generated by counsel for Old American, American Savings, New West, ASB, and their subsidiaries' which constitute attorney work-product; and

(5) Documents of Old American, American Savings, New West, ASB, and their subsidiaries which were generated after the date of FCA's bankruptcy filing.

Essentially, the parties have asked the Court to rule on matters of law; specifically, whether certain privileges are applicable to the enumerated categories of documents.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(a), (d); 28 U.S.C. § 157(a), (b)(1), (b)(2)(A) and (O), and general order No. 266 of the United States District Court for the Central District of California.

## ISSUES

1. Whether section 552(b) of the Freedom of Information Act and agency regulations issued pursuant to the Act create a privilege available to the FDIC, New West, and ASB to withhold doc-

uments from production to the Chapter 7 Trustee?

2. Whether certain government documents are protected from disclosure under the Official Information Privilege?

3. Whether customer financial records are privileged from disclosure under the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq*, or privacy rights under State Law?

4. Whether examination reports are prohibited from disclosure by 18 U.S.C. § 1906?

5. Whether the FDIC, New West, and ASB may assert the Attorney–Client Privilege of Old American?

6. Whether the employment of certain officers, directors, and counsel by both FCA, the parent company, and Old American, the subsidiary, constituted a waiver of confidentiality and privilege by Old American as to FCA?

7. Whether the FDIC, New West, and ASB may assert the Attorney Work–Product doctrine regarding documents prepared by attorneys for Old American?

8. Whether documents generated after FCA filed its bankruptcy petition can be properly withheld from production to the Chapter 7 trustee?

## ANALYSIS

■ Bankruptcy Code section 704 sets forth the duties of a trustee in a Chapter 7 liquidation. Such duties include the duty to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(3) (1989). Bankruptcy Rule 2004 provides, in relevant part, that:

1. According to Bankruptcy Rule 9017, "[t]he Federal Rules of Evidence ... apply in cases under the Code." Rules Bankr.Proc. 9017.

 Federal Rule Evidence 501 provides, in relevant part, that:
 [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by

(a) On motion of any party in interest, the court may examine any entity.

. . . . .

(c) The attendance of any person for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

Rules Bankr.Proc. 2004(a) & (c).

The scope of Rule 2004 is broad, and an examination pursuant to this rule may extend to third parties who have had dealings with the debtor. *See In re Wilcher*, 56 B.R. 428, 433 (Bankr.N.D.Ill.1985) (discussing *In re Mittco*, 44 B.R. 35, 36 (Bankr.E.D.Wis.1984); *Chereton v. United States*, 286 F.2d 409, 413 (6th Cir.1961).

■ On the other hand, the scope of an examination under Rule 2004 is not unlimited;

the examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to acts, conduct, or property or to the liabilities and financial condition of the debtor, or any matter which may affect the administration of the debtor's estate, or the debtor's right to a discharge....

Rules Bankr.Proc. 2004(b). Matters having no relationship to the debtor's affairs, or the administration of the bankruptcy estate are not proper subjects of a Rule 2004 examination. *Johns–Manville Corp.*, 42 B.R. 362 (D.C. S.D.N.Y.1984). Additionally, those seeking to examine witnesses or records pursuant to Rule 2004 are subject to applicable evidentiary privileges.[1] Accordingly, to preserve the rights of those from whom discovery is sought, the Court may issue an appropriate protective order.[2]

the Courts of the United States in light of reason and experience....
Fed.R.Evid. 501.

2. Section 105 of the Bankruptcy Code provides, in part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title." 11 U.S.C. § 105(a) (1988).

 Federal Rule of Civil Procedure 26(c), applicable to contested matters in bankruptcy through Bankruptcy Rule 9014, also provides that:
 [u]pon motion by a party or by the person from whom discovery is sought, and for good

Privilege Claimed Pursuant to the Freedom of Information Act, and Applicable Regulations

The FDIC, New West, and ASB contend that certain records and documents are protected, or prohibited from disclosure, under 5 U.S.C. § 552(b) and 12 C.F.R. §§ 309.5 and 505.5. The statutory and regulatory authorities cited, however, do not create evidentiary privileges protecting documents from disclosure to the Chapter 7 Trustee.

Section 552 of Title 5 codifies the Freedom of Information Act ("FOIA") and provides for access to information and records developed or maintained by Federal Agencies. 31 C.F.R. §§ 1.1–1.7.[3] Section 552(b) exempts from disclosure matters which include:

> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
>
> . . . . .
>
> (8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions.

5 U.S.C. § 552(b)(5) & (8) (1988). Title 12 of the Code of Federal Regulations, part 505, contains regulations issued by the Office of Thrift Supervision supplementing the regulations promulgated by the Department of Treasury under 31 C.F.R. part 1, subpart A. Part 309 of Title 12, issued under the authority of 5 U.S.C. § 552, sets forth FDIC regulations pertaining to public access to agency information and records. 12 C.F.R. § 309.1 (1990).

Subsection (a) states specifically that "each agency shall make available to the *public* information as follows . . ." 5 U.S.C. § 552(a) (1988) (emphasis added). In *Kerr v. United States District Court for the Northern District of California*, 511 F.2d 192 (9th Cir.1975), *aff'd* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), the Court of Appeals determined that the exemptions enumerated in Section 552(b) of the Freedom of Information Act did not constitute privileges for civil discovery. The Court observed that "[t]he purpose of this act was to expand the access of the public to official records of federal agencies, subject to stated exceptions." *Kerr*, 511 F.2d at 197. "They were intended only to permit the withholding of certain types of information from the public generally." *Id.* at 198.

Footnote # 4 to FDIC regulation 12 C.F.R. § 309.5(c) is consistent with the courts holding in *Kerr* and states in its entirety that:

> [c]lassification of a record as exempt from disclosure under the provisions of § 309(c) shall not be construed as authority to withhold the record if it is otherwise subject to disclosure under the Privacy Act of 1974 (5 U.S.C. 552(a)) or *other Federal Statute*, any applicable regulation of FDIC, or any other Federal agency having jurisdiction thereof, or

cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or under burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. . . .

Fed.R.Civ.P. 26(c).

3. 31 C.F.R. part 1, subpart A, contains the Department of Treasury regulations implementing the Freedom of Information Act. 31 C.F.R. § 1.1(a) (1990).

*any directive or order of any court of competent jurisdiction.*

12 C.F.R. § 309.5(c) (emphasis added).

In sum, the exemptions enumerated in the Freedom of Information Act, and the regulations cited by the FDIC, New West, and ASB limit the general public's access to government documents, but do not create privileges applicable to the Chapter 7 Trustee seeking to compel production under Bankruptcy Rule 2004.

The Official Information Privilege

■ In comparison, the Official Information Privilege is recognized as a common law privilege separate from the Freedom of Information Act. *In re Verrazzano Towers, Inc.*, 7 B.R. 648 (Bankr.E.D.N.Y.1980); *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 577 (E.D.N.Y. 1979); *Denny v. Carey*, 78 F.R.D. 370 (E.D.Penn.1978). The privilege is based on the assumption that "effective and efficient governmental decision making requires a free flow of ideas among governmental officials." *Verrazzano*, 7 B.R. at 651 (quoting *Franklin*, 478 F.Supp. at 580–81).

In *Verrazzano Towers*, the Bankruptcy Court analogized the FDIC's interest in protecting its records from disclosure pursuant to a subpoena duces tecum in a bankruptcy proceeding to the policy supporting the exemption from disclosure under the Freedom of Information Act. Bankruptcy Judge Price observed that there are:

> at least three important policies to be served by limiting access to FDIC records. These include 1) the promotion of stability of financial institutions, 2) the maintenance of cooperative relationships between banks and their supervising agencies, and 3) the protection of confidential information relating to bank customers.

*Verrazzano Towers*, 7 B.R. at 652.

■ Nevertheless, the privilege is qualified and protects only opinions and recommendations in intra-governmental documents. *Franklin*, 478 F.Supp. at 581

**4.** For example, Section 3403 provides that:
No financial institution, or officer, employees, or agent of a financial institution, may provide to any *Government* authority access to or copies

(citing *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); other citations omitted). "Even when the government asserts the official information privilege with respect to opinions or recommendations, nondisclosure is not guaranteed." *Franklin*, at 582. The court must balance the interests in nondisclosure against the interest in document production. *Id.* Consequently, an *in camera* examination of disputed documents is generally required, *Denny*, 78 F.R.D. at 373, and the court may require that the documents produced be subject to a protective order limiting disclosure. *See Denny*, 78 F.R.D. 370; *Verrazzano Towers*, 7 B.R. 648.

Assertions of Privilege Under Customer Financial Privacy Rights

In withholding certain documents from production, the FDIC, New West, and ASB also assert the privacy rights of bank customers. The FDIC, New West, and ASB cite the Right to Financial Privacy Act (12 U.S.C. §§ 3401–3422) and 18 U.S.C. § 1906 (Crimes & Criminal Procedure), as well as State Law, as authority for nondisclosure. Although the authority cited does not prohibit production to the Chapter 7 Trustee, disclosure should be limited to the Trustee under a protective order.

■ The Trustee seeks to compel production pursuant to Federal Law—Bankruptcy Rule 2004. The validity of a privilege asserted to prevent production and considerations to limit disclosure are, therefore, determined under Federal Law. See *Kerr*, 511 F.2d at 197.

■ Next, the Right to Privacy Act governs financial institutions' disclosure of customer financial records to government authorities. 12 U.S.C. §§ 3401–3422 (1988).[4] Since the Chapter 7 Trustee is not a government authority, the Act is inapplicable to the disclosure of documents to him.

■ Finally, although 18 U.S.C. § 1906 establishes criminal penalties for unautho-

of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter.
12 U.S.C. § 3403(a) (1988) (emphasis added).

rized disclosure of bank examination reports, that section provides explicitly that it is disclosure without permission from the appropriate authority, like the FDIC, that renders the disclosure unauthorized.[5] Furthermore, the statute expressly provides that government employees who disclose examination reports without the written permission of the appropriate authority are not subject to penalties under this section if the disclosure was ordered by a court of competent jurisdiction. Since disclosure may be made pursuant to FDIC authorization, or by Court order, Section 1906 does not prohibit the production of documents to the Chapter 7 Trustee.

 Although disclosure to the Chapter 7 Trustee is not prohibited by the authorities discussed above, the FDIC, New West, and ASB have a legitimate interest in preventing the general disclosure of customer financial information. *Verrazzano Towers*, 7 B.R. at 648; *see also* 12 C.F.R. § 310.[6] It is appropriate, therefore, to require a protective order permitting disclosure of relevant documents containing customer financial information to the Chapter 7 Trustee, but limiting the scope of production to avoid the general disclosure of such information.

### Assertions of Privilege Under Attorney–Client Communications

 The FDIC, New West, and ASB may properly assert the attorney-client privilege of Old American.

"It is by now well established ... that the attorney-client privilege attaches to corporations as well as to individuals," *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985) (citing *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); and the power to exercise, or waive, the privilege rests with a corporation's management. *Weintraub*, 471 U.S. at 348, 105 S.Ct. at 1990. "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Weintraub*, at 349, 105 S.Ct. at 1991. In comparison, the mere sale of some of a corporation's assets does not necessarily transfer the corporation's attorney-client privilege. See *Federal Deposit Insurance Corp. v. Admundson*, 682 F.Supp. 981 (D.Minn.1988).

The Ninth Circuit has also recognized that the FDIC, as receiver, steps into the shoes of an insolvent institution. *Federal Deposit Insurance Corp. v. Glickman*, 450 F.2d 416 (9th Cir.1971). Other Courts have held specifically that as a receiver, the FDIC may raise the attorney-client privilege of the insolvent institution. *Federal Deposit Insurance Corp. v. Berry*, Civ. No. 1–85–62, slip op. (E.D.Tenn. June 3, 1985).

 When the Bank Board appointed the FSLIC receiver for Old American and

---

5. Whoever, being an examiner, public or private, or General Accounting Office employee with access to bank examination report information under section 714 of title 31, discloses the names of borrowers or the collateral for loans of any member bank of the Federal Reserve System, or bank insured by the Federal Deposit Insurance Corporation examined by him or subject to General Accounting Office audit under section 714 of title 31 to other than the proper officers of such bank, *without first having obtained the expressed permission in writing from* the Comptroller of the Currency as to a national bank, the Board of Governors of the Federal Reserve System as a State member bank, or *the Federal Deposit Insurance Corporation* as to any other insured bank, or from the board of directors of said bank, except *when ordered to do so by a court of competent jurisdiction,* or by direction of Congress of United States, or either House thereof, or any committee of Congress, or either House duly authorized or as authorized by section 714 of title 31 shall be fined not more than $5,000 or imprisoned not more than one year or both.

18 U.S.C. § 1906 (1988) (emphasis added).

6. According to the Privacy Act Regulations 12 C.F.R., part 10:

(a) Except as provide in part (b) of this section, the Corporation will not disclose any record contained in a designated system of records to any person or agency except with prior written consent of the individual to whom the record pertains.

(b) The restrictions on disclosure in paragraph (a) of this section do not apply to any of the following disclosures:

(11) Pursuant to the order of a court of competent jurisdiction.

12 C.F.R. § 310.10(a), (b)(11) (1990).

American Savings, the FSLIC succeeded by operation of law to the privileges of the closed corporations. 12 U.S.C. § 1821(d) (1988). Applicable Federal Law provides that:

The Corporation shall, as conservator or receiver, and by operation of law, succeed to—

(i) all rights, titles, powers, and *privileges* of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

12 U.S.C. § 1821(d)(2)(A)(i) and (ii) (1988) (emphasis added).

■ The purchase agreements between the FSLIC and the successors to Old American indicate that in distributing assets and liabilities to successor institutions, the FSLIC expressly retained rights and duties including claims, causes of action, and judgments against former officers and employees. The agreements also expresses FSLIC's intention to retain rights over unspecified books and records of the closed corporations. Accordingly, as successor to the FSLIC, the FDIC succeeded to the privileges possessed by Old American and American Savings at the time these institutions were placed in receivership. The privileges retained by the FDIC, and not otherwise waived, are applicable to the production request of the Chapter 7 Trustee.[7]

### Waiver of Confidentiality and Privilege

The Trustee also argues that since at the time Old American was a subsidiary of FCA, FCA had access to the records of Old American, and since FCA and Old American shared officers, directors, and counsel, communications between Old American and its counsel were never intended to be confidential as to FCA as a matter of law.

■ While "the presence of third parties not needed for the transmittal of the information will negate the [attorney-client] privilege," *James Julian, Inc v. Ratheon Co.*, 93 F.R.D. 138, 141 (D.Del.1982) (citing *Pitney–Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980)), whether the presence of certain parties was reasonable in light of an interest in confidentiality is essentially a factual question the court must determine considering the identity of the parties and the context of the communications. See *Julian*, 93 F.R.D. 138. For example, confidentiality at a meeting of corporate officers would not be waived simply because some of the officers whose presence was reasonably required at the meeting were also officers of another corporation. See *Upjohn*, 449 U.S. at 391, 101 S.Ct. at 683. Likewise, the mere commingling of records does not constitute a waiver of otherwise privileged communications. *Julian*, 93 F.R.D. 138.

■ Although disclosure to third parties of otherwise privileged information constitutes a waiver of that privilege, officers, directors and counsel who may have served FCA as well as Old American are not necessarily relegated to the status of third parties. Without other evidence of waiver, privileged communications disclosed to such parties do not lose their privileged character as a matter of law.

### Assertions of Privilege Under Attorney Work–Product

The unique question raised by the Chapter 7 Trustee is whether documents prepared by attorneys for Old American in preparation for litigation with parties other than the FCA can now be withheld from production to the FCA under the Attorney Work–Product Doctrine.

The Supreme Court first recognized the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman*, the Court held that to qualify for protection as work-product, the

---

7. The Chapter 7 Trustee relies in large measure on the authority of *Admundson*, 682 F.Supp. 981. In *Admundson*, the district court held that the FDIC did not succeed to the privileges of the insolvent corporation. In contrast to the proceeding before this Court, in *Admundson*, the FDIC was acting only as a purchaser of assets, and not in its capacity as a receiver.

materials sought must have been prepared by another party in anticipation of litigation. *Id.* The doctrine was eventually codified in Fed.R.Civ.P. 26(b). Rule 26(b) provides, in part, that:

> [s]ubject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party representatives ... only upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

In holding the work-product doctrine applicable to third parties through Exemption 5 of Section 552(b) of the Freedom of Information Act, the Supreme Court observed that the literal language of the Rule protects materials prepared for any litigation or trial as long as the materials were prepared by or for a party to the subsequent litigation. *Federal Trade Commission v. Grolier Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). In contrast, the Ninth Circuit held that a third party could not invoke the doctrine to defeat the discovery of work-product in litigation unrelated to the party from whom the discovery is sought, *Southern California Edison Co. v. Westinghouse Electric Corp.,* 892 F.2d 778 (9th Cir.1989); although a third party may seek a protective order under Rule 26(c). *Id.; see also* n. 2, *supra.*

 In the motion to compel production, the Chapter 7 trustee contends that since no adversary action has been com-

menced in the Bankruptcy Court, the parties objecting to disclosure under the work-product doctrine are not parties to litigation in this Court and are, therefore, unprotected by Rule 26(b)(3). The Trustee's argument is not persuasive.

Federal Rule of Civil Procedure 26(b)(3) applies to motions under Bankruptcy Rule 2004 through Bankruptcy Rule 9014, and Rule 26 has not been limited to discovery where litigation has been commenced. Compare *Westinghouse,* 892 F.2d 778 (production was sought from a third party in litigation unrelated to the third party). Rule 26(b) expressly provides protection for materials "prepared in *anticipation* of litigation...." Fed.R.Civ.P. 26(b)(3) (emphasis added). Moreover, the Trustee has admittedly sought the production of documents as part of an investigation into potential claims and causes of action against entities, including regulators, in relation to pre- and post bankruptcy transactions with FCA and/or its former principle operating subsidiary Old American.[8] The work-product doctrine is applicable to documents prepared in anticipation of litigation with the Chapter 7 Trustee and to materials prepared by Old American, and its successors in interest, in anticipation of litigation or for trial with third parties in related matters relevant to the trustee's investigation of the parties asserting this privilege.

### Documents Generated After FCA's Bankruptcy Filing

 Documents generated after FCA filed Bankruptcy are not automatically subject to nondisclosure. As discussed above, the scope of a Rule 2004 examination is limited to the financial affairs of the debtor and the administration of the bankruptcy estate. This Court is not persuaded that documents generated after a debtor files his petition cannot be relevant to the debtor's financial condition or the administration of the bankruptcy estate as a matter of law. The FDIC, New West, and ASB

---

8. On September 11, 1990, the Chapter 7 Trustee filed Complaints in The Bankruptcy Court to avoid and recover preferential transfers under Bankruptcy Code §§ 547 and 550; one of the complaints names American Savings Bank, FSB and New West Federal Savings and Loan Association as defendants.

cannot withhold this category of relevant documents, therefore, solely on the ground that such documents were generated post-petition.

## Conclusion

The following documents are not privileged from disclosure to the Chapter 7 Trustee:

1) Documents withheld under the authority of the Freedom of Information Act and the regulations promulgated pursuant to the Act;

2) Customer financial records withheld pursuant to 12 U.S.C. § 3401 *et seq* and State law;

3) Documents withheld pursuant to 18 U.S.C. § 1906;

4) Documents withheld because such documents were generated after FCA filed bankruptcy.

Assertions of privilege are properly made with regard to documents withheld under the following theories:

1) The Official Information Privilege;

2) Attorney–Client Communications;

3) The Attorney Work–Product Doctrine.

Finally, Old American's employment of officers, directors, and counsel who were also associated with FCA, did not necessarily constitute a waiver of privilege.

IT IS SO ORDERED.