**Francis M. LOUSTALET, et al., Plaintiffs,**

v.

**REFCO, INC., et al., Defendants.**

**No. CV 92–7628 RJK.**

United States District Court, C.D. California.

Nov. 10, 1993.

Daniel Harkins, Harkins & Michelman, Irvine, CA, Michael Borchard, Borchard & Willoughby, Newport Beach, CA, for plaintiffs.

Jack Weinberg, Graubard, Mollen, Horowitz, Pomeranz & Shapiro, New York City, Michael Rhodes, Cooley, Goddard, Castro, Huddleston & Tatum, San Diego, CA, for defendants Refco, Inc., Refco Capital, Refco Securities and Refco Ltd.

Joseph K. Brenner, Wilmer, Cutler & Pickering, Washington, DC, Mark Epstein, Mungertoles & Olson, Los Angeles, CA, for defendant First Innerstate of Denver.

James Sanders, Shepperard, Mullin, Richter & Hampton, John C. Fauvre, Los Angeles, CA, for defendant Bank of America.

Terry O'Malley, King & Brown, Englewood, CO, for defendant Steen Ronlow.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, District Judge.

## BACKGROUND

Defendants, Refco Inc., et al. ("Refco") move to compel deposition testimony by third party witnesses, Steven D. Wymer and Michael F. Perlis ("Perlis"), and to compel third party witnesses, Steven D. Wymer ("Wymer") and Stroock & Stroock & Lavan ("Stroock"), to produce documents.

The following issues were submitted for resolution by this Court:

1. Whether Wymer and Perlis must answer questions concerning communications among Wymer, Perlis, and Stroock, and legal advice given by Perlis or Stroock during the period Wymer was still engaging in fraudulent activities prior to December 1991.

2. Whether Wymer and Perlis must answer questions concerning communications between Perlis or Stroock made to any attorney to the various municipalities defrauded by Wymer.

3. Whether Perlis and Stroock must produce documents exchanged with, received from, or delivered to any attorney to the various municipalities defrauded by Wymer.

## DISCUSSION

### A. Attorney Client Privilege: Crime–Fraud Exception Communications Among Wymer, Perlis, and Stroock Prior to 1991

Generally, discovery may be had as to any matter, *not privileged*, which is relevant to the subject matter of the pending action. Fed.R.Civ.P. 26(b)(1) (emphasis added). An attorney client privilege exists to encourage full and frank disclosure of information between an attorney and his client, and to further the interests of justice. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The attorney client privilege does not, however, protect communications that further a future crime or fraud. *U.S. v. Zolin*, 491 U.S. 554, 562–63, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989). This crime-fraud exception applies even where the attorney is unaware that his advice is sought to further such an illegal purpose. *U.S. v. Laurins*, 857 F.2d 529, 540 (9th Cir.1988) (citing *U.S. v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977)).

To invoke the crime-fraud exception, the party seeking disclosure must "make out a prima facie case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity." *In Re Nat'l Mortg. Equity Corp.*, 116 F.R.D. 297, 300 (C.D.Cal.1987) (quoting *U.S. v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977)). Next, it must be shown that there is some relationship between the particular communications sought and the illegality. *Laurins*, 857 F.2d at 540 (referring to *In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985)).

Wymer and Perlis assert that the communications made between them prior to 1991 are protected by the attorney-client privilege. Refco claims that the communications are not protected because they fit within the crime-fraud exception.

Refco asserts that Wymer testified to the fact that during the time he sought advice from Perlis, Wymer was defrauding his clients. When the SEC launched an investigation into Denman, one of Wymer's companies, Wymer retained Perlis to assist in preparing a written response to the SEC. Perlis testified that he "participated in the preparation" of Wymer's letter to the SEC regarding the dissemination of false financial statements by Denman. Wymer has acknowledged that his letter dated September 27 contained false statements intended to mislead the SEC. Therefore, Refco claims that Perlis' assistance promoted Wymer's intended and continuing illegal activities. As such, the communications fit within the crime-fraud exception to the attorney client privilege.

Wymer and Perlis contend that Refco has failed to make the requisite prima facie showing because Perlis was not retained to further Wymer's fraudulent activities. Furthermore, the particular communications sought did not further a crime or fraud. The services rendered between May of 1990 and September 1991 involved advice on how to comply with the law. Perlis in no way affirmatively furthered Wymer's fraudulent conduct. Wymer, not Perlis, issued the letter to the SEC. Perlis had no communications with, and made no representations to, the SEC. Hence, Perlis asserts that he was not used by Wymer to further his crimes.

■ In cases where the Court has invoked the crime-fraud exception, counsel was in some way affirmatively used to further the client's crime or fraud. *See e.g., U.S. v. Laurins,* 857 F.2d 529, 540–41 (9th Cir.1988) (court noted that the attorney furthered his client's fraud by affirmatively representing his client's lies to the IRS and to the Court); *In re Sealed Case,* 754 F.2d 395, 402 (D.C.Cir.1985) (court noted that attorneys essentially served as "front men" in a scheme to destroy evidence and subvert the judicial process).

Here, Wymer, not Perlis, drafted and sent the deceptive letter to the SEC. Perlis was not affirmatively used to further Wymer's illegal activity. Wymer simply sought advice from counsel concerning the legality of his conduct before responding to the SEC. Such communications are within the attorney client privilege. *See, U.S. v. White,* 887 F.2d 267, 272 (D.C.Cir.1989) (court stated that "where a client seeks counsel's advice to determine the legality of conduct before the client takes any action," the justifications for the attorney client privilege are strongest).

Although it is difficult to determine whether Perlis was affirmatively used to further Wymer's fraud, allowing Refco to discover all communications made prior to 1991 under the crime-fraud exception would be to virtually deny the existence of any attorney-client privilege between Wymer and Perlis. As such, disclosure as to all communications prior to 1991 will not be compelled by this Court.

## B. Attorney Work Product: Communications and Documents Exchanged with Counsel for the Municipalities Defrauded by Wymer

■ The work product doctrine protects documents and things prepared in anticipation of litigation or trial by or for a party or his representatives. Fed.R.Civ.P. 26(b)(3). The protection, however, is qualified. The court may order disclosure if "the party seeking discovery [shows a] substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* The work product privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's general interest in revealing all true and material facts relevant to the resolution of a dispute. *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1371 (D.C.Cir.1984).

In February of 1993, Wymer met with, and provided documents to, representatives of his former clients. A forensic accounting firm retained by Wymer and his counsel prepared reports which were disseminated to these former clients.

Perlis and Wymer assert that communications and documents exchanged with the representatives of Wymer's former clients are protected under a joint attorney work prod-

uct doctrine. Refco contends that the work product doctrine is inapplicable because Wymer is not a party to the present litigation and Wymer has no "common interest" with his former clients and hence waived any purported privilege when he disclosed information to them.

### 1. Wymer is Not a Party to the Present Litigation

█ The Ninth Circuit has declared that "[Rule 26(b)(3)], on its face, limits its protection to one who is a party . . . to the litigation in which the discovery is sought." *In re Cal. Pub. Utils. Comm'n,* 892 F.2d 778, 781 (9th Cir.1989) (hereinafter *CPUC*). "Documents prepared for one who is not a party to the present suit are wholly unprotected even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit. *Id.* (citing **C. Wright & A. Miller, Federal Practice and Procedure** § 2024, at 201–02).

Refco correctly relies on *CPUC* in asserting that because Wymer is not a party to the present litigation, he cannot invoke Rule 26(b)(3) to prevent disclosure of the communications and documentation sought under the attorney work product doctrine.

Perlis tries to circumvent the standing issue by arguing that when Wymer met with and provided documents to his former clients, he was a party to extensive civil and criminal litigation arising from the same facts. This argument does not persuade the Court. Because Wymer is not a party to the present suit, documents prepared on his behalf are wholly unprotected despite the fact that he was a party in closely related lawsuits. *CPUC,* 892 F.2d at 781.

Perlis next tries to distinguish *CPUC* by claiming that the entity attempting to invoke rule 26(b)(3) in *CPUC* was neither a party nor in any way related to the parties to the litigation. Yet Wymer, he asserts, fully anticipated being named in litigation when he provided his former clients with information.

█ Perlis' efforts to distinguish *CPUC* are unsuccessful.[1] The Court in *CPUC* makes no distinction based on "relatedness to the parties" in denying 26(b)(3) protection. Instead, the sole reason work product protection could not be invoked was because the person who refused to comply with the subpoena was not a party. Hence, the fact that Wymer, a non-party to the present litigation, anticipated being named in the litigation affords him no protection under 26(b)(3). As such, Perlis and Stroock may not object to disclosure of the communications and documents sought since they have no standing to assert the work product doctrine.

### 2. Wymer Has No Common Interest with His Former Clients

█ The joint-defense privilege, which is an extension of the attorney client privilege, has long been recognized by the Ninth Circuit. *Waller v. Financial Corp. of America,* 828 F.2d 579, 583 n. 7 (9th Cir.1987) (citing *Hunydee v. U.S.,* 355 F.2d 183 (9th Cir.1965) and *Continental Oil v. U.S.,* 330 F.2d 347 (9th Cir.1964)). The joint defense privilege applies to cooperating defendants and cooperating plaintiffs. *Sedlacek v. Morgan Whitney Trading Group, Inc.* 795 F.Supp. 329, 331 (C.D.Cal.1992). The district court in *Sedlacek* also recognized that the privilege is not limited to co-parties. *Id.* (citing *In re Grand Jury Subpoenas, 89–3 and 89–4, John Doe 89–129,* 902 F.2d 244 (4th Cir.1990)).

The cases which hold that the work product privilege applies where an attorney for one party has disclosed information or documentation to an attorney for a non-party have found a "common interest" linking the party and the nonparty. In *U.S. v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir. 1980), the district court defined "common interests" as the transferor and transferee

---

1. Perlis also cites *In re Financial Corp. of America,* 119 B.R. 728 (C.D.Cal.1990), which in fact does distinguish *CPUC* by holding that the work product doctrine extends to materials prepared in anticipation of litigation by a non-party and materials prepared for trial with third parties in related matters relevant to the pending action. *Id.* at 738. However, this Court is not bound by a decision of the United States Bankruptcy Court. Instead, the proper precedent comes from the Ninth Circuit's *CPUC.*

anticipating litigation against a common adversary on the same issue or issues.

> We do not endorse a reading of the [attorney work product doctrine] so broad as to allow confidential disclosure to *any* person without waiver of the work product privilege. The existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege ... *so long as transferor and transferee anticipate litigation against a common adversary on the same issue[s], they have strong common interests* in sharing the fruit of the trial preparation efforts.

(emphasis in original and added).

▮ Refco is correct in asserting that there is no common interest between Wymer and his former clients. Wymer's clients were victimized by Wymer's fraudulent scheme. Indeed, the only reason Wymer cooperated with his former clients was to obtain a favorable criminal sentence, not because they shared common interests. The mere fact that Wymer's sentence and restitution are tied to plaintiff's recovery does not create a common interest between the two.[2] Nor are Wymer and his former clients anticipating litigation against a common adversary.

▮ As such, Perlis' voluntary disclosure of his alleged work product to present or potential adversaries, in this instance, constituted a waiver of the work product privilege. It was Wymer's self-interested decision to disclose information to his former clients so as to receive lenient punishment from the Court. Yet, Wymer now seeks work product protection for those same disclosures and documents against different adversaries in suits revolving around the same matters disclosed to the former clients.

Wymer conceded that he fully anticipated being named in the litigation, and this was the reason he required that they keep all disclosed information confidential. Yet according to *In re Subpoenas Duces Tecum,* 738 F.2d 1367 (D.C.Cir.1984), it would be "inconsistent and unfair to allow [Wymer] to select according to [his] own self interest to which adversaries [he] will allow access to the materials." *Id.* at 1372. As such, Refco shall be allowed to discover the communications and documents provided by Perlis and Stroock to Wymer's former clients.

For the reasons discussed above, it is HEREBY ORDERED:

1. Refco's Motion to Compel Deposition Testimony concerning communications among Wymer, Perlis, and Stroock, and legal advice given by Perlis or Stroock during the period Wymer was still engaging in fraudulent activities prior to December 1991 is DENIED.

2. Refco's Motion to Compel Deposition Testimony concerning communications between Perlis or Stroock made to any attorney of the various municipalities defrauded by Wymer is GRANTED.

3. Refco's Motion to Compel Production of Documents exchanged with, received from, or delivered to any attorney of the various municipalities defrauded by Wymer is GRANTED.

---

**2.** In its Opposition, Wymer relies on *Chamberlain Mfg. Corp. v. Maremont Corp.,* 1993 WL 625511, 1993 U.S.Dist. LEXIS 9952, to support its position that Wymer shares a common interest with his former clients since his sentence and restitution were directly tied to plaintiff's recovery. In *Chamberlain,* plaintiff was found to have a common interest with the government because his payment to the government was discounted to the extent the government succeeded in its action. However, Wymer's counsel fails to point out that in *Chamberlain,* the litigation was pending against the *same adversary.* Hence, in addition to its questionable precedential value, the case can be distinguished.